**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | | |
|---|---|---|
| **LANDMARK AMERICAN INSURANCE COMPANY,**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**GARGOYLE MANAGEMENT INC.**<br><br>***Defendant.*** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 5:24-cv-38** |

**PLAINTIFF LANDMARK AMERICAN INSURANCE COMPANY'S**
**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiff Landmark American Insurance Company ("Landmark") files this Original Complaint for Declaratory Judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 and, in support, respectfully shows the Court as follows:

## I. THE PARTIES

1. Plaintiff Landmark is an incorporated insurance company organized under the laws of the State of New Hampshire and has its principal place of business in Georgia.

2. Defendant Gargoyle Management Inc. ("Gargoyle") is a Texas company with its principal place of business in Texas. It can be served through its registered agent: David Postar, Gargoyle Management, Inc., 5625 County Road 7410, Lubbock, Texas 79424.

## II. JURISDICTION

3. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201 because complete diversity exists between the parties, the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs, and Landmark seeks declaratory relief pursuant to 28

U.S.C. § 2201, et seq., the Federal Declaratory Judgment statute and/or the Texas Declaratory Judgment statute.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because the property at issue is located in this district.

## III. INTRODUCTION AND BACKGROUND

5. Gargoyle is the Named Insured under a commercial property policy issued by Landmark, Policy No. LHD927749 (the "Policy"), which provides property damage coverage to properties located at thirty-one locations, including, as relevant here, Location #3 – 8801 Valencia Avenue, Lubbock, Texas 79424; Location #11 - 7801 FM 179, Wolfforth, TX 79382; Location #22 – 15820 CR 2100, Lubbock, TX 79424; Location #27 – 2910 N. Frankford, Lubbock, TX 79416; Location #28 – 7106 82nd Street, Lubbock, TX 79424; Location #29 – 7108 82nd Street, Lubbock, TX 79424; and Location #30 – 1525 S. Loop 289, Lubbock, TX 79416, (the "Properties") for which Gargoyle serves as the management company.

6. The Policy has effective dates of November 1, 2022 to November 1, 2023.

7. This declaratory judgment action arises from Gargoyle's insurance claim for property damage allegedly resulting from hailstorm on or about June 23, 2023 (the "Claim").

8. On July 14, 2023, Gargoyle's Claims Advocate, Tina Leannah of Sanford Tatum, provided notice of the loss via the Property Loss Notice form stating that the buildings at location numbers #3, #22, #27, #28, #29 & #30 sustained damage due to a hailstorm on June 23, 2023.

9. The first notice of loss also included the contact information for Tim Adams of Alpha Public Adjusters, LLC ("Alpha PA"), Gargoyle's public adjuster.

10. Landmark began its investigation of the Claim the day after it received the notice of loss by hiring Paul R. White & Company, Inc. ("Paul R. White") as the independent adjuster.

Landmark also engaged a building consultant, Young & Associates ("Young") to assist in determining the scope of damage caused by hail.

11. Landmark acknowledged the Claim on July 17, 2023 and provided Gargoyle's Claims Advocate with the claim number and contact information for Landmark's file handler and for Paul R. White, the independent adjuster Landmark retained.

12. Beginning on July 24, 2023 and continuing through July 26, 2023, Landmark's independent adjuster conducted its initial inspection of Locations 3, 22, 27, 28, 29, and 30 with Tim Adams, Gargoyle's public adjuster.

13. During this initial inspection of Location No. 22, Landmark's independent agent noticed a discrepancy between the number of buildings shown to him by Gargoyle's public adjuster and the number of buildings listed on the Policy's Statement of Values.

14. On August 1, 2023, Gargoyle's Claims Advocate advised Landmark that the Claim should be updated to include hail damage to building at Location No. 11, which hail damage Gargoyle also claimed occurred as a result of the hailstorm on June 23, 2023.

15. Paul R. White conducted a site inspection for Location No. 11 beginning on August 9, 2023 and continuing through August 10, 2023. Five additional buildings adjoining Location No. 22 were also inspected at this time based on information from Gargoyle's representatives that those buildings were intended to be included as part of Location No. 22.

16. As a result of the initial inspections, Paul R. White recommended that Landmark retain an engineer to assist with the adjustment of the Claim.

17. On August 23, 2023, Paul R. White & Company, Inc., on behalf of Landmark, issued a Reservation of Rights ("ROR") letter (the "August 23, 2023 ROR") to Tim Adams advising that Landmark was continuing its adjustment of the Claim and outlining Gargoyle's

certain relevant policy provisions that may apply to the Claim.

18. The August 23, 2023 ROR further advised that Landmark would be retaining an engineer with respect to Location Nos. 11, 22, 27, 28, and 30 to investigate the age of the hail related damage, delineate between any old and recent damage, and determine whether any of the observed roof damage is cosmetic in nature, as defined by the Policy. The August 23, 2023 ROR also included estimates for Location Nos. 3 and 29, along with an undisputed proposed statement of loss and undisputed proofs of loss for those locations.

19. On August 29, 2023, Paul R. White & Company, Inc., on behalf of Landmark, issued to Tim Adams a letter supplementing the August 23, 2023 ROR (the "Augst 29, 2023 Supplemental Letter").

20. The August 29, 2023 Supplemental Letter advised Gargoyle of additional relevant policy provisions that may apply to the Claim. That letter also included estimates for the buildings at Location No. 28, along with undisputed proposed statements of loss for Location Nos. 3, 28, and 29 and nine undisputed proofs of loss for Location No. 28

21. Beginning September 6, 2023 and continuing through September 7, 2023, Bradley East, M.S., P.E. and Stephen Gutierrez, Jr. of Polaris Forensics, Inc. ("Polaris"), the engineering firm retained by Landmark to assist with the adjustment of the Claim, conducted an inspection of the buildings at Location Nos. 11, 22, 27, 28, and 30. Gargoyle's General Manager and its public adjusters from Alpha PA were also present at this inspection. Among other findings, Polaris ultimately determined that much of the damage claimed by Gargoyle was not the result of the June 23, 2023 hail storm.

22. On September 28, 2023, Paul R. White, on behalf of Landmark, issued additional correspondence to Gargoyle's public adjuster attaching both undisputed proposed statements of

loss and undisputed proofs of loss for Location Nos. 3, 28, and 29, as well as Paul R. White's estimates for those locations.

23. Based on the observed damage, and despite Gargoyle's refusal to execute the proofs of loss prepared on behalf of Landmark, on September 28, 2023, Landmark issued an undisputed actual cash value ("ACV") payment to Gargoyle in the amount of $602,407.

24. On or about September 28, 2023, Landmark also retained Marlon Duggan of Young & Associates as a construction consultant to assist with adjustment of the Claim. Despite multiple requests, Gargoyle's representatives refused to allow the construction consultant to inspect the Properties, in contravention of Gargoyle's duties under the Policy.

25. On October 25, 2023, Paul R. White, on behalf of Landmark, issued to Tim Adams a partial denial of coverage for the Claim (the "Partial Disclaimer Letter"). In addition to again advising of Gargoyle's obligations under the Policy, the Partial Disclaimer letter enclosed the engineering report issued by Polaris, advised of Polaris's findings, and denied coverage for portions of the Claim. In particular, the Partial Disclaimer Letter advised that Landmark disclaims coverage for certain claimed damages at Locations Nos. 27 and 30 that occurred outside the Policy's effective dates, that were not caused by hail damage, or that consisted solely of excluded cosmetic damage.

26. On October 31, 2023 and on behalf of Gargoyle, Peter Salaverry, Gargoyle's retained counsel, issued correspondence to Landmark enclosing a sworn statement in proof of loss (the "Sworn Proof of Loss") and demanding payment in the amount of $17,487,230.60 on or before January 2, 2023.

27. The Sworn Proof of Loss was unsatisfactory for numerous reasons, many of which Paul R. White, on behalf of Landmark, identified in written correspondence to Mr. Salaverry

rejecting the Sworn Proof of Loss.

28. On or about December 22, 2023, Paul R. White, on behalf of Landmark, issued an additional ROR with a request for information (the "ROR/RFI") to Gargoyle through Mr. Salaverry. The ROR/RFI identified additional pertinent policy provisions that may apply to limit or preclude coverage for the Claim, again reminded Gargoyle of its obligations under the Policy, and requested several categories of information needed to complete Landmark's adjustment of the Claim.

29. The ROR/RFI further advised that despite Gargoyle not allowing Landmark's construction consultant to inspect the Properties and Gargoyle's not providing previous information Landmark requested, Landmark would pay an unallocated advance ACV payment in the amount of $3,634,804.94. The unallocated advance ACV payment was in addition to the $602,407 undisputed ACV payment issued on September 28, 2023 and was primarily based on the rough estimate prepared by Young & Associates in its desk review of the Claim.

30. Landmark issued the unallocated advance ACV payment to Gargoyle on December 22, 2023.

31. Landmark continues its adjustment of the Claim.

32. Pursuant to Tex. Ins. Code §542A.0006(a), Landmark elects to accept legal responsibility for any liability that its agents, including but not limited to Chris White and John Hill of Paul R. White & Company, Inc., Marlon Duggan of Young & Associates, Bradley East, M.S., P.E. and Stephen Gutierrez, Jr. of Polaris Forensics, Inc., may have to Gargoyle for any of their acts or omissions related to the Claim.

## IV. SUMMARY OF COVERAGE ISSUES

33. Landmark seeks a declaration as to the following coverage issues:

a. Whether Gargoyle failed to comply with the Policy's conditions for coverage for the claimed loss, including reporting damage within one year of the date of loss or damage, taking all reasonable steps to protect the covered property from further damage, permitting inspection of the Property proving the loss or damage, and cooperating with the investigation or settlement of the Claim;

b. The extent to which Landmark was prejudiced by Gargoyle's failure to provide prompt notice of the claimed damage;

c. The extent to which the Policy limits coverage to only hail and wind damage, as distinguished from other and uncovered causes of loss known to have caused damage to the Property;

d. The extent to which the Policy's Pre-Existing Damage Exclusion excludes coverage for the claimed loss;

e. The extent to which the Policy's Ordinance or Law Exclusion excludes coverage for the claimed loss;

f. The extent to which the Scheduled Limit of Liability with Proportional Value Endorsement applies to limit Gargoyle's recovery for the claimed loss;

g. The proper application of the deductible for the claimed loss;

h. The extent to which the Policy's Limitations on Coverage for Roof Surfacing Endorsement, which limits coverage for roofs exceeding twelve years of age to actual cash value at the time of loss or damage, limits coverage for the claimed loss;

i. The extent to which the Policy's Causes of Loss – Windstorm or Hail Endorsement excludes coverage for loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters;

j. The extent to which the Policy provides coverage for premises or buildings not identified on the Policy's applicable Schedule of Values;

k. The extent to which any further payments for the claimed loss are owed by Landmark to Gargoyle under the Policy.

## V. THE LANDMARK POLICY

35. All of the terms, conditions, definitions, exclusions, and other provisions of the Policy are hereby incorporated herein by reference.

36. All conditions precedent to filing this lawsuit have occurred.

37. The Policy provides coverage for direct physical loss or damage to Covered Property, as set forth in the Building and Personal Property Coverage Form, which states, in pertinent part:

> **A. Coverage**
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> **1. Covered Property**
>
> Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.
>
> **a. Building,** meaning the building or structure described in the Declarations, including:
>
> **(1)** Completed additions;
>
> * * *
>
> **(5)** If not covered by other insurance:
>
> **(a)** Additions under construction, alterations and repairs to the building or structure;
>
> **(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.
>
> * * *

38. Coverage for debris removal is subject to the following provisions set forth in the Building and Personal Property Coverage Form as follows:

> **A. Coverage**
>
> * * *
>
> **4. Additional Coverages**
>
> **a. Debris Removal**
>
> **(1)** Subject to Paragraphs **(2)**, **(3)** and **(4),** we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.
>
> **(2)** Debris Removal does not apply to costs to:
>
> **(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4),** the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

* * *

39. The Policy only provides coverage for loss or damage to the Property commencing during the policy period (November 1, 2022 to November 1, 2023), as provided in the Commercial Property Conditions Endorsement, which provides:

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

**a.** During the policy period shown in the Declarations….

* * *

40. Pursuant to the Commercial Property Conditions Endorsement, any loss or damage to the Property that commenced prior to the policy period is not covered under the Policy.

41. The Policy also excludes coverage for any loss or damage that occurred, existed, or commenced prior to the November 1, 2022 inception of the Policy as set forth in the Pre-Existing Damage Exclusion Endorsement, which provides in relevant part:

> We will not pay for any loss or damage which occurred, existed, or commenced prior to the inception date of this Policy, whether such loss or damage was known or unknown to any Insured or party seeking recovery under this Policy. This insurance also does not apply to the following loss or damage which is likewise excluded from coverage:
>
> (a) Pre-existing damage which occurred, existed, or commenced, in whole or in part, prior to the inception date of this Policy;
>
> (b) Loss or damage which occurs during this Policy period, but was caused directly or indirectly by pre-existing damage which pre-dated this Policy;
>
> (c) Loss or damage resulting from pre-existing damage which occurred, existed, or commenced prior to the inception date of this Policy; or
>
> (d) Loss or damage which is, or is alleged to be, in the process of occurring as of the inception date of this Policy, even if the "occurrence" continues during this Policy period.
>
> Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> *Property damage which occurred, existed, or commenced prior to the effective date of this Policy will be deemed to have happened prior to, and not during, the term of this insurance.*

* * *

42. Coverage under the Policy is further subject to the provisions of the Causes of Loss – Windstorm or Hail Endorsement, which provides, in relevant part:

# CAUSES OF LOSS – WINDSTORM OR HAIL

**A. COVERED CAUSES OF LOSS**

When **Windstorm or Hail** is shown in the Declarations, Covered Causes of Loss means:

**Windstorm or Hail**, but not including:

1. Frost or cold weather;

2. Ice (other than hail), snow or sleet, whether driven by wind or not; or

3. Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters.

* * *

**C. EXCLUSIONS**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance or Law**

The enforcement of any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance or Law, applies whether the loss results from:

**(1)** An ordinance or law that is enforced even if the property has not been damaged; or

**(2)** The increased cost incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition or property, or removal of its debris, following a physical loss to that property.

* * *

**2**. We will not pay for loss or damage caused by or resulting from:

* * *

**f.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

* * *

43. Pursuant to the Policy's Windstorm or Hail Loss Conditions Endorsement, which modifies the Duties in the Event of Loss or Damage, the Policy does not provide coverage for claims reported more than one year after the date the loss or damage occurs. In particular, the Windstorm or Hail Loss Conditions Endorsement states:

> With respect to loss or damage caused by or resulting from windstorm or hail, the following is added to the **Duties in the Event of Loss or Damage** Loss Condition:
>
> In addition to your obligation to provide us with prompt notice of loss or damage, with respect to any claim wherein notice of the claim is reported to us more than one year after the date of loss or damage, this policy shall not provide coverage for such claims.

44. Application of the deductible to the Claim is governed by the Windstorm or Hail Percentage Deductible, which provides, in pertinent part:

## WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

| **Schedule of Locations & Deductible Percentages:** |
| --- |
| Please refer to the Deductible & Period of Restoration Endorsement-RSG 94068 *(edition date of form RSG 94068 purposefully omitted in this reference).* |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

This endorsement applies to those locations listed above.

**A.** The Windstorm or Hail Deductible, as shown in the Schedule and set forth in this endorsement, applies to covered loss or damage caused directly or indirectly by Windstorm or Hail. This Deductible applies to each occurrence of Windstorm or Hail.

Nothing in this endorsement implies or affords coverage for any loss or damage that is excluded under the terms of the Water Exclusion or any other exclusion in this policy. If this policy is endorsed to cover Flood under the Flood Coverage Endorsement (or if you have a flood insurance policy), a separate Flood Deductible applies to loss or damage attributable to Flood, in accordance with the terms of that endorsement or policy.

As used in this endorsement, the terms "specific insurance" and "blanket insurance" have the following meanings: Specific insurance covers each item of insurance (for example, each building or personal property in a building) under a separate Limit of Insurance. Blanket insurance covers two or more items of insurance (for example, a building and personal property in that building, or two buildings) under a single Limit of Insurance. Items of insurance and corresponding Limit(s) of Insurance are shown in

the Declarations.

**WINDSTORM OR HAIL DEDUCTIBLE CALCULATIONS**

**B. Calculation Of The Deductible – Specific Insurance Other than Builders' Risk**

**1. Property Not Subject To Value Reporting Forms**

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the Limit(s) of Insurance applicable to the property that has sustained loss or damage.

**2. Property Subject To Value Reporting Forms**

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the value(s) of the property that has sustained loss or damage. The value(s) to be used are the latest value(s) shown in the most recent Report of Values on file with us.

However:

**a.** If the most recent Report of Values shows less than the full value(s) of the property on the report dates, we will determine the deductible amount as a percentage of the full value(s) as of the report dates.

**b.** If the first Report of Values is not filed with us prior to loss or damage, we will determine the deductible amount as a percentage of the applicable Limit(s) of Insurance.

* * *

45. The Deductible & Period of Restoration Endorsement referenced in the Schedule of Locations & Deductible Percentages in the Windstorm or Hail Percentage Deductible further explains the proper calculation and application of the deductible and provides as follows:

**DEDUCTIBLE AND PERIOD OF RESTORATION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

In the event that multiple deductibles apply in any one occurrence, unless it is addressed elsewhere in this endorsement, only the largest minimum deductibles shall apply.

| | |
|---|---|
| **Covered Cause(s) of Loss:** | Windstorm or Hail |
| **Applicable Location, Building or Property:** | All |
| **Deductible:** | 10%, subject to a minimum of $100,000 per occurrence (Property Damage and Business Income) |
| **Revised Period of Restoration:** | |

* * *

**A. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition, the Agreed Value Optional Coverage or with any applicable condition of this policy. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**B. Deductible Amount by Covered Cause of Loss**

The amount of your Deductible may vary based upon the Covered Causes of Loss. The Deductible amount will be stated in the Schedule above and may be on a fixed dollar or percentage basis. Please review the Schedule above carefully.

* * *

**D. Deductible Percentage Amount**

Unless otherwise stated in the Schedule above, if the Deductible is expressed as a percentage, the Deductible is calculated separately for and applies separately to:

1. Each building that sustains loss or damage;

* * *

**E. Deductible Application**

The Deductible will be applied and calculated to loss or damage to Covered Property on a Per Occurrence basis or by Policy Location, subject to the Limit of Insurance. Your Deductible will be applied as stated in the Schedule above. Please review the Schedule above carefully.

1. Per Occurrence – If your Deductible for a specific Covered Cause of Loss is applied Per Occurrence, your Deductible will be applied to the total of all loss or damages to Covered Property under this Policy directly resulting from a Covered Cause of Loss

2. Location Application – If your Deductible for a specific Covered Cause of Loss is applied by Location, your Deductible will be applied to the total of all loss or damages to each Covered Location under this Policy directly resulting from a Covered Cause of Loss. If two or more Covered Locations are insured under this Policy, then the deductible will be applied separately at each Covered Location against the sum of all loss or damages incurred.

46. The limit potentially payable per building is further subject to the terms of the Policy's Scheduled Limit of Liability with Proportional Value Endorsement, which provides:

It is understood and agreed that the following special terms and conditions apply to this policy:

**1.** In the event of loss hereunder, liability of the Company shall be limited to the least of the following liability limitation measures in any one "occurrence":

**a.** The actual adjusted amount of the loss, less applicable deductibles and primary and underlying excess limits; or

**b.** 100% of the individually stated value for each scheduled item of coverage insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits. If no value is shown for a scheduled item then there is no coverage for that item; or

**c.** The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy, if, after the application of the limits in **a.** or **b.** above to each scheduled item of coverage which had the loss, the total exceeds such Limit of Liability.

**2.** If a location involved in a loss includes multiple insured buildings, and, at the time of loss, the latest Statement of Values on file with this Company does not include values by individual buildings, then in that event and only for such scheduled items of coverage, the liability of the Company for physical loss or damage to any such insured building and for loss of Business Income/Rental Value shall not exceed the "Proportional Value" of such corresponding scheduled item of coverage less applicable deductibles and primary and underlying excess limits. The "Proportional Value" amount shall be used as the value for such scheduled items of coverage contemplated in Paragraph **1.b.** above. The terms and conditions in Paragraph **1.** above otherwise remain in full force and effect.

"Proportional Value" means an individual scheduled item of coverage's value as calculated by:

* * *

**b.** Number of Buildings Method

If the square footage of the individual buildings involved in the loss was not previously submitted to the Company, the "Proportional Value" of such scheduled item of coverage shall be calculated by dividing the location's scheduled item of coverage value for Buildings (and if also involved in the loss, the value of Business Income/Rental Value) as shown on the latest Statement of Values on file with this Company, by the number of individual buildings at the location at the time of the loss.

When applying Paragraphs **1.** and/or **2.** above, where the loss or "occurrence" involves more than one insured location or scheduled item of coverage, the liability of the Company for each individually scheduled item of coverage shall be measured separately and on a per scheduled item basis. Nothing herein requires the Company to utilize the same liability limitation measure for all insured scheduled items or insured locations involved in any one "occurrence". The liability limitation measure to be used by the Company shall be the measure providing the least amount of coverage for each scheduled item individually.

**3.** If the Declarations page or any other endorsement or policy provisions provide a percentage Limit of Insurance or a Company participation percentage in the risk, then after determination of the scheduled limit of liability to each scheduled item of coverage

as explained in Paragraphs **1.** and **2.** above, such percentage represents our percentage of the covered loss otherwise determined to be payable, and the most we will pay is limited to our percentage of any covered loss after applying the liability limitation measures, applicable deductibles and primary and underlying excess limits.

**4.** Coverage under this policy is provided only at the locations listed on the latest Statement of Values on file with this Company, and/or made part of this policy.

**5.** The premium for this policy is based upon the Statement of Values on file with this Company, and/or made part of this policy.

Sublimits are part of, not in addition to, any limit of insurance including the individually stated value or "Proportional Value" for each scheduled item of coverage as determined by this endorsement.

The Company may have no liability after applying the liability limitation measures, applicable sublimits, applicable deductibles, and primary and underlying excess limits.

The term "occurrence", where used in this policy, shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties arising from one event.

* * *

47. Coverage for the Claim is also limited by application of the Limitations on Coverage for Roof Surfacing Endorsement, which limits coverage for roofs exceeding twelve years of age to actual cash value at the time of loss or damage as follows:

## LIMITATIONS ON COVERAGE FOR ROOF SURFACING

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

| Premises Number | Building Number | Age of Roof (Years) | Indicate Applicability (Paragraph A. and/or Paragraph B.) |
|---|---|---|---|
| All | All | 12 | A. |
| All | All | | B. |
| | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | |

**A.** The following applies with respect to loss or damage by **wind and/or hail** to all buildings or structures identified in the Schedule above as being subject to this Paragraph **A.**:

If there is no "Age of Roof" shown in the Schedule above, Replacement Cost coverage (if otherwise applicable to such property) does NOT apply to roof surfacing. Instead, we will determine the value of roof surfacing at actual cash value as of the time of loss

or damage.

If there is an "Age of Roof" shown in the Schedule above, Replacement Cost coverage (if otherwise applicable to such property) does NOT apply to roof surfacing as respects any roofs that are as old or older than the "Age of Roof" shown in the Schedule above. Instead, we will determine the value of roof surfacing at actual cash value as of the time of loss or damage.

In the event of loss or damage, if the roof has been replaced since the "Age of Roof" shown in the Schedule above and the Insured is able to provide written notice and paid receipt of the roof replacement, Paragraph A. is considered null and void regarding any loss or damage that occurs after the date of the roof's complete replacement.

**B.** The following applies with respect to loss or damage by **wind and/or hail** to all buildings or structures identified in the Schedule as being subject to this Paragraph **B.**: We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

**C.** With regard to any roof that is valued at Actual Cash Value, any coverage for Increased Cost of Construction and/or Ordinance or Law will not apply, regardless of anything to the contrary elsewhere in this policy.

**D.** For the purpose of this endorsement, roof surfacing includes, but is not limited to, shingles; tiles; cladding; gravel; ballast; metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection or insulation, as well as roof flashing.

48. Gargoyle's Duties in the Event of Loss or Damage are set forth in the Building and Personal Property Coverage Form's Loss Conditions, which states, in pertinent part:

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

* * *

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a

Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

49. Landmark contends that one or more of the terms, conditions and exclusions cited above applies to define, exclude, or limit coverage and thus applies to limit the amount payable, if any, under the Policy for Gargoyle's Claim.

## VI. CLAIM FOR DECLARATORY RELIEF

50. Landmark hereby incorporates by reference the preceding paragraphs.

51. Pursuant to 28 U.S.C. § 2201, Landmark seeks a declaration including, but not limited to, the following:

a. Whether Gargoyle failed to comply with the Policy's conditions for coverage for the claimed loss, including reporting damage within one year of the date of loss or damage, taking all reasonable steps to protect the covered property from further damage, permitting inspection of the Property proving the loss or damage, and cooperating with the investigation or settlement of the Claim;

b. The extent to which Landmark was prejudiced by Gargoyle's failure to provide prompt notice of the claimed damage;

c. The extent to which the Policy limits coverage to only hail and wind damage, as distinguished from other and uncovered causes of loss known to have caused damage to the Property;

d. The extent to which the Policy's Pre-Existing Damage Exclusion excludes coverage for the claimed loss;

e. The extent to which the Policy's Ordinance or Law Exclusion excludes coverage for the claimed loss;

f. The extent to which the Scheduled Limit of Liability with Proportional Value Endorsement applies to limit Gargoyle's recovery for the claimed loss;

g. The proper application of the deductible for the claimed loss;

h. The extent to which the Policy's Limitations on Coverage for Roof Surfacing Endorsement, which limits coverage for roofs exceeding twelve years of age to actual cash value at the time of loss or damage, limits coverage for the claimed loss;

i. The extent to which the Policy's Causes of Loss – Windstorm or Hail Endorsement excludes coverage for loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters;

j. The extent to which the Policy provides coverage for premises or buildings not identified on the Policy's applicable Schedule of Values;

k. The extent to which any further payments for the claimed loss are owed by Landmark to Gargoyle under the Policy.

52. Landmark reserves the right to assert additional relevant Policy provisions it identifies as it continues to adjust the Claim and as the case develops. Therefore, Landmark also requests that the Court make such other and further declarations as may be appropriate and prayed for by Landmark.

**PRAYER**

**WHEREFORE**, Landmark prays that Gargoyle be summoned to appear and answer herein, and that upon trial hereof, the Court declare the scope of Landmark's obligations with respect to the Claim and that Landmark be awarded such other and further relief, at law or in equity, to which it may be justly entitled.

**[SIGNATURE BLOCK APPEARS ON FOLLOWING PAGE]**

Respectfully submitted,

**SHACKELFORD, BOWEN, MCKINLEY & NORTON, LLP**

By: */s/ Jay W. Brown*
**Jay W. Brown** (attorney-in-charge)
State Bar No. 03138830
jbrown@shackelford.law
**Stephanie Villagomez Lemoine**
State Bar No. 24053028
slemoine@shackelford.law
**Gisela A. Aguilar**
State Bar No. 24132153
gaguilar@shackelford.law
717 Texas Avenue, 27th Floor
Houston, Texas 77002
Phone: (832) 415-1801
Fax: (832) 415-1095

**Blair Beene**
Texas Bar No. 24115066
bbeene@shackelford.law
9201 N. Central Expressway, Fourth Floor
Dallas, Texas 75231
Telephone: (214) 780-1400
Fax: (214) 780-1401

**ATTORNEYS FOR PLAINTIFF,**
**LANDMARK AMERICAN INSURANCE COMPANY**